IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

SOUTHEASTERN SPORTS MANAGEMENT                                    PLAINTIFF

V.                                              CIVIL ACTION NO. 2:05CV61-B-B

SCOTTY BAKER, CITY OF SOUTHAVEN,
MISSISSIPPI, ET AL.                                               DEFENDANTS

**MEMORANDUM OPINION**

This cause comes before the court upon the defendants' motions for summary judgment. Upon due consideration of the motions, responses, exhibits, and supporting and opposing authority, the court is ready to rule.

Factual and Procedural Background

The plaintiff, Southeastern Sports Management ("SSM"), a Mississippi corporation, brings this action against several defendants, including the City of Southaven, Mississippi, and alleges various wrongdoings arising from SSM's contractual relationship with the City to develop and manage annual youth baseball tournaments at City-owned athletic fields.

SSM initially entered into an "Operations Agreement" with the City in 1998 in which SSM agreed to pay the City a percentage of revenue generated from certain athletic events in exchange for the leasehold. SSM developed a baseball tournament program, and the City built a seventeen-field ballpark, Snowden Grove Park, which served as the venue for the tournaments. SSM promoted, advertised, and managed the tournaments at the leased facilities.

Tim Dulin, SSM's president and majority shareholder, hired the defendant Scotty Baker as Vice President of Operations. Baker signed an employment agreement with SSM in September 2000, which provided, *inter alia*, a two-year non-compete and non-solicitation

agreement. In February 2003, SSM's president at that time, Derek Jett, proposed an addendum to Baker's employment agreement which replaced the post-termination non-compete agreement with an agreement to prohibit competition during the course of employment. Baker signed this agreement, but Jett did not. Jett's affidavit acknowledging that he approved this addendum is in the record currently before the court, however. The record also contains a virtually identical agreement from December 2003, which Tim Dulin and Scotty Baker both signed.

Baker's duties with SSM included building a database of customers and teams and assisting in the development and administration of the tournaments. During his employment with SSM, Baker also served as a "State Director" for the United States Specialty Sports Association, or USSSA, an organization which sanctions certain tournaments and registers member teams on a fee basis. SSM approved of Baker's holding a position with USSSA.

In April 2002, the City and SSM entered into a second agreement – a modification of the 1998 agreement. Pursuant to the 2002 Operations Agreement, SSM was to operate the fields and was to pay the City $225,000.00 in the first year (2002), $245,000.00 in the second year (2003), and $265,000.00 in the third year of the agreement (2004). The term of the agreement extended through the term of the then current City administration – July 2005. The agreement provided that either party could terminate the agreement with or without cause at anytime except from April until August. Further, any games already scheduled and approved would not be affected by a termination. It is uncontested that SSM was often delinquent in making the payments owed to the City. The parties disagree as to the exact amount of the delinquency, however. The City Board voted to end the relationship between the City and SSM on November 2, 2004.

Scotty Baker asserts that he called Tim Dulin on November 12, 2004, and resigned from SSM. Dulin denies having received the phone call. On that same day, Baker registered a web domain for JBJ Sports Productions, Inc., ("JBJ"). It is uncontested that Baker was on the payroll with SSM until November 15, 2004.

The City entered into a contract with JBJ on that same day, November 15, 2004. This agreement, which provided that JBJ would thereafter operate the fields and manage the youth baseball tournaments, was approved at a meeting of the City Board on November 16, 2004.

Beginning sometime in November 2004, the City negotiated with SSM for the purchase of essentially all of the assets that had been used by SSM in the operation of the baseball tournaments on the City fields. Part of this purchase apparently offset the delinquent payments owed by SSM to the City.

After JBJ Sports assumed the duties once held by SSM, the defendant Clark Brown, who had registered the domain and established a website for SSM, altered the SSM website to link directly into the JBJ website. It is uncontested that the web domain was registered in Brown's name, but SSM asserts ownership of the website. SSM has named Brown's company, Vital Technology, Inc., as a defendant in addition to Brown.

On March 17, 2005, SSM filed a complaint for a temporary restraining order and other relief. This court held a hearing on the TRO on March 31, 2005, and the TRO was denied. SSM has brought claims against the various defendants for, *inter alia*, breach of contract, violation of the Computer Fraud and Abuse Act, conspiracy, unjust enrichment, violations of 42 U.S.C. § 1983, and tortious interference with business relations. All defendants have filed motions for summary judgment.

Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274 (quoting Fed. R. Civ. P. 56(c), 56(e)). Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).

Analysis

The court initially turns its attention to the City's motion for summary judgment. SSM asserts that the City breached the 2002 Operations Agreement when it terminated the agreement in November 2004 without allowing SSM to manage the tournaments which SSM alleges were already scheduled for the 2005 season. It is uncontested that either party could terminate the contract with or without cause as long as the termination did not occur between April and August and as long as any previously scheduled games were not affected by the termination. SSM

asserts that the 2005 season had already been scheduled and that the schedule had been approved. The City denies that the schedule was approved at the time the agreement was terminated.

SSM argues that the schedule approval process in the past was a very informal procedure. SSM would submit a schedule to City Parks Director Mike Mullins in late summer or fall before an upcoming spring season; Mullins would check the dates for conflicts; and if there were no problems, the schedule was basically "approved." SSM points to certain deposition testimony of Mullins as well as that of Scotty Baker for proof that the 2005 schedule was approved. The court has examined the cited testimony, however, and finds no such revelation. The testimony merely reveals that the schedule was submitted for approval – not that it was actually approved. In fact, Mullins, as well as Baker and Southaven Mayor Charles Davis, have testified affirmatively that the schedule was never approved. The court finds most significant, however, SSM's own admission that the schedule was never approved. In an answer to an interrogatory propounded by the defendants, Tim Dulin, on behalf of SSM, states, "Plaintiff submitted its 2005 tournament schedule in August to the Defendant, City of Southaven, which did not approve said schedule." SSM has offered no explanation for this statement, and the court finds it conclusive on the issue. The City effectively terminated the Operations Agreement in accordance with the contract's terms.

The court also finds that the Operations Agreement terminated by its own provisions. The agreement contemplated a term covering three baseball seasons (2002, 2003, and 2004). No payment terms were provided for the 2005 season. The plaintiff has admitted, however, that it could not operate the tournaments for another year without being obligated to pay the City. While the agreement expressly states that the "term" of the contract extended through the elective

5

term of the then current administration – July 2005 – the City notes that the agreement contemplated, in addition to baseball, the soccer and football seasons which would extend from November to July. Examining the plain language within the four corners of the document, the court finds that the inclusion of the 2005 youth baseball season was not the original intention of the contracting parties. Further, the City had the authority to terminate the contract with or without cause. It did so in accordance with the terms of the agreement, and the court finds that the City is entitled to judgment as a matter of law on SSM's breach of contract claim.

Because the City acted in accordance with the terms of the agreement with SSM, other claims asserted by SSM against the City must fail as a result. First, the court addresses the plaintiff's Section 1983 and Fifth Amendment "taking" claim. The threshold issue in a substantive or procedural due process analysis is whether the plaintiff held any constitutionally-protected property right. *Baker v. McCollan*, 443 U.S. 137, 146-47, 99 S. Ct. 2689, 2695-96, 61 L. Ed. 2d 433 (1979). "If there is no protected property interest, there is no process due . . . ." *Stuler v. Pickar*, 958 F.2d 103 (5th Cir. 1992) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S. Ct. 2701, 2704, 33 L. Ed. 2d 548 (1972)). "It is evident . . . that the threshold requirement of any due process claim, be it substantive or procedural, is a showing that the government deprived the plaintiff of a liberty or property interest. Absent such a demonstration, no right to due process can accrue." *Pruett v. Dumas*, 914 F. Supp. 133, 137 (N.D. Miss. 1996).

The plaintiff asserts that it had a protected property interest in the leasehold and in its tournaments. The City, however, was not constitutionally prohibited from exercising contractual rights arising from the Operations Agreement with SSM. Among those rights was the right to

terminate the contract. As addressed above, the City exercised that right in accordance with the terms of the contract. SSM, therefore, cannot show that the termination of the contract amounts to an unconstitutional taking because SSM's protected property interest – the leasehold – was "taken" according to terms agreed upon in the Operations Agreement.

Likewise, the plaintiff is unable to show an illegal taking in regard to its tournament program. The plaintiff asserts that the City "assumed ownership of Plaintiff's 2005 tournaments...at Snowden Grove Park without compensation to Plaintiff when Defendant, City of Southaven, benefited and profited from Plaintiff's tournaments and leasehold interest." The plaintiff, however, has admitted that it could hold its tournaments at sites other than the City fields. Because its tournaments were not specific to City fields, the plaintiff has no claim for an unconstitutional taking. The court notes that SSM's "tournaments" as a whole may be contrasted with the right to operate those tournaments on specified City fields. The right to operate the tournaments on specified City fields ended when the agreement was terminated in accordance with the terms of the contract.

Further, the plaintiff has failed to prove or even plead the existence of a City policy which caused a deprivation of a constitutionally-protected right. The sole basis of liability for a municipality is a showing of a municipal policy that resulted in a violation of a plaintiff's federally-protected rights. *Monell v. New York Dep't of Social Services*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). The *Monell* decision also established that local governments cannot be held liable under a theory of respondeat superior. *Monell*, 436 U.S. at 691, 98 S. Ct. at 2036. A showing of municipal policy generally requires proof of more than a single incident before liability may be imposed. *City of Oklahoma City v. Tuttle*, 471 U.S. 808,

7

821, 105 S. Ct. 2427, 2435 (1985). The record before the court reveals no municipal policy upon which liability may be based pursuant to Section 1983. Because, by the plaintiff's own admission, the unjust enrichment claim flows from the Section 1983 claim, that claim must fail as well, and the court has no need to examine whether the claim would be barred by the Mississippi Tort Claims Act had it been brought as an individual state law claim.

The plaintiff also asserts a civil conspiracy claim against the defendants, arguing that Baker and various City officials or employees devised a scheme to deprive SSM of its alleged right to manage and operate the tournaments. The plaintiff, through Tim Dulin, has admitted, however, that it has no personal knowledge supporting its contention that the defendants were involved in a conspiracy. It is, of course, "a rarity that direct evidence of an explicit agreement exists; thus, the agreement may be proved by indirect or circumstantial evidence." *Mack v. Newton*, 737 F.2d 1343, 1350 (5th Cir. 1984). However, although "a court is required to draw inferences favorable to the plaintiffs, those inferences must be 'within the range of reasonable probability.'" *Parker v. Quinn*, No. 1:04CV313-D-D, 2006 WL 980810, at *4 (N.D. Miss. Apr. 12, 2006) (quoting *Love v. King*, 784 F.2d 708, 711 (5th Cir. 1986)). "When the necessary inference is so tenuous that it rests merely upon speculation and conjecture, it is the duty of the court to withdraw the case from the jury." *Love*, 784 F.2d at 711.

In the present case, the plaintiff relies on speculation, conjecture, and conclusory allegations which are contrary to the sworn testimony of the parties involved. For instance, the plaintiff points to Baker's testimony regarding a November 11, 2004, meeting between Baker and the Mayor. Baker testified that, "according to the Mayor, it [SSM] was going to be gone. It wasn't going to be operating the tournaments." Baker further testified that he showed the Mayor

his employment contract with SSM during the meeting (the day before Baker resigned from SSM). By November 11, 2004, the City Board had already voted to terminate the contract with the plaintiff. Thus, while this testimony reveals that Baker may indeed have violated his contract with SSM, the alleged statement made by the Mayor is nothing more than the relaying of an official City action which presumably was already public knowledge. Baker's showing the Mayor his contract with SSM, likewise, is no proof of any City wrongdoing. In fact, no evidence cited by the plaintiff reveals any wrongdoing on the part of the City. The speculative leap required to get from the alleged conversations to the conclusion that the City was involved in a conspiracy would be considerable and well beyond what is allowed.

Most significant, however, as to the civil conspiracy claim against the City specifically, is the fact that the City had every right to terminate the Operations Agreement with SSM. The court, therefore, finds no underlying wrongful act upon which a conspiracy claim can be based. Of course, a civil conspiracy may also be defined as an agreement to participate in a lawful act in an unlawful manner, but the plaintiff has shown no proof of such an agreement here. *Hobson v. Wilson*, 737 F.2d 1, 51 (D.C. Cir. 1984). For these reasons, the plaintiff's conspiracy claims against all parties must fail.

The plaintiff also brings a claim against the various defendants, including the City, for violation of the Computer Fraud and Abuse Act. Because this claim appears to be primarily directed at defendant Clark Brown and Vital Technology, the court will address the claim in regard to those parties first. It is uncontested that Clark Brown registered and paid for the web domain at issue with his own funds and in his own name. What is contested, however, is whether this fact is proof of his ownership of the website. SSM asserts that it owns the website

9

because Tim Dulin had a "barter agreement" with Brown. The record reveals that Brown created the website as a favor for SSM and Dulin. Brown was paying for his son's baseball lessons with Dulin, and at some point, Dulin no longer charged Brown for the lessons. Also, Dulin apparently waived some fees for Brown's baseball team. These acts appear to be casual favors in return for other casual favors – not a legally-binding agreement. The court, therefore, finds that Brown is the owner of the website and, as such, was allowed to change it as he saw fit. Thus, Brown and Vital Technology did not violate the Computer Fraud and Abuse Act. Further, no evidence has been set forth that any other party committed such a violation. For these reasons, these claims are dismissed.

The plaintiff's remaining claims are directed at Scotty Baker and arise from his contractual relationship with SSM. Examining the documents at issue, the court finds that the December 2003 addendum to the agreement is most relevant. The plaintiff asserts that Tim Dulin did not read the document before signing it. "Under Mississippi law, it is well-settled that a party to a contract is presumed to have knowledge of the contents of the contract that he or she signed." *Citifinancial, Inc. v. Newton*, 369 F. Supp. 2d 545, 550 (S.D. Miss. 2005). This presumption has considerable force, as "knowledge of the contents of a contract will be imputed to a contract party even though he did not read the contract before signing it." *Newton*, 369 F. Supp. at 550 (quoting *Brumfield v. Pioneer Credit Co.*, 291 F. Supp. 2d 462, 469 (S.D. Miss. 2003)). Dulin signed the document at issue in the case at bar, and the court finds no evidence that he did so as the result of false pretenses. Dulin is, therefore, charged with having read and agreed to the agreement, and SSM is bound to its terms. SSM's material misrepresentation claim is dismissed.

Regarding the contract's prohibition against the disclosure of confidential information, the parties agreed to an exclusion. Directly above Dulin's signature is an underscored provision which reads as follows:

> **EXCLUSION (3a&b):  Records, computer programs, computer-stored information, computer discs and other media, files, manuals, letters, notes, reports, customer lists, documents, equipment and the like relating to any manner of USSSA Baseball.

SSM asserts that Baker disclosed and used SSM's customer list when he founded JBJ Sports and began managing and operating the tournaments for the City. It is undisputed, however, that this customer list was developed simultaneously for SSM and USSSA. The list clearly falls within the exclusion outlined above. As to information relating to concessions, merchandising, sponsorships, and methods of operating tournaments, the record reveals that these matters do not constitute trade secrets as they are generally known or readily ascertainable by proper means. For these reasons, SSM's claims against Baker relating to trade secret violations must fail.

Also contained in the December 2003 agreement was a revised "No Compete Agreement." This section provides as follows:

> I agree I will not, during the course of employment, engage in any activity that is competitive with any activity of the Company.  For purposes of this paragraph, competitive activity shall include forming or making plans to form a business entity that may be deemed to be competitive with any business or future activity of the company.

The court finds that genuine issues of material fact exist in regard to SSM's claim against Baker for breach of his employment agreement.[1] The record indicates that Baker may have made "plans to form a business entity" while still employed with SSM. For this reason, the breach of

---

[1] The claim survives only as to the covenant not to compete, however. The claim regarding the non-disclosure/confidentiality agreement fails, as addressed above.

contract claim against Baker survives summary judgment. Closely related to this claim is SSM's claim against Baker for breach of the duty of good faith and loyalty. The court denies the defendant's motion on this claim as well. Though these claims are grounded in state law, the court will exercise pendent jurisdiction for the sake of judicial economy.[2]

Finally, the plaintiff asserts a claim against Baker for tortious interference with business relations. The record contains no proof that the City or any other defendant was influenced to terminate a relationship with SSM as a result of any actions of Scotty Baker. Indeed, the acts complained of by SSM primarily occurred after the City had already terminated SSM's Operations Agreement. For these reasons, the defendant Baker is entitled to judgment as a matter of law on the tortious interference claim.

The court notes that the City defendants, Scotty Baker, and JBJ each filed counter-claims against the plaintiff for costs of litigation and attorneys' fees. The parties should move for such relief in separate motions.

## Conclusion

For the foregoing reasons, the court finds that the City defendants' motion for summary judgment is well-taken and shall be granted. Likewise, the summary judgment motion of defendants Clark Brown and Vital Technology is well-taken and shall be granted. The summary judgment motion of defendants Scotty Baker and JBJ Sports, Inc., shall be granted in part and

---

[2]"Where a case is before the court under federal question jurisdiction, pendent-claim jurisdiction over state law claims exists where there is a 'common nucleus of operative fact.'" *Whiting v. Univ. of Southern Mississippi*, 451 F.3d 339 (5th Cir. 2006) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)). "While the federal courts have power to hear cases in such circumstances, they may exercise discretion over whether or not to exert that power." *Whiting*, 451 F.3d at 344 (citing *Gibbs*, 383 U.S. at 726)).

denied in part. The plaintiff's only surviving claims against Baker are the breach of contract claim and the claim for breach of the duty of good faith and loyalty. A separate order in accord with this opinion shall issue this day.

This, the 1st day of August, 2006.

/s/ Neal Biggers
_____
**NEAL B. BIGGERS, JR.
SENIOR U.S. DISTRICT JUDGE**